## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ADRIAN THOMAS,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 05 C 4406 |
| | ) |
| **GUY PIERCE,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Adrian Thomas has brought a petition pursuant to 28 U.S.C.A. § 2254 (2006) for a writ of habeas corpus. Thomas is currently in the custody of the State of Illinois Department of Corrections and is incarcerated at the Pontiac Correctional Center.[1] I must deny his petition because Thomas has procedurally defaulted all of his claims and has not shown either a cause for this default, or that actual prejudice or a fundamental miscarriage of justice will result from a failure to consider his claims.

---

[1]    Petitioner originally named Alan Uchtman, warden of the Menard Correctional Center, as respondent to his petition. However, the State of Illinois, in its response to Thomas' petition, noted that Thomas has been transferred to the Pontiac Correctional Center, where the warden is Guy Pierce. Because the appropriate respondent to a petition for writ of habeas corpus is the person who holds the petitioner in custody, *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973), the appropriate respondent here is Pierce, not Uchtman.

Thomas was convicted of first degree murder, armed violence and unlawful use of a weapon during a two-day bench trial in 1995. During his trial it was established that on December 11, 1993, Thomas shot into a car parked at a gas station, killing a fifteen-month-old child, Denzell Gist, and seriously injuring the child's mother, Tonya Gist. The same bullet struck and passed through Denzell Gist, who was sitting on his mother's lap, and also struck Ms. Gist. Thomas maintained at trial, with little corroborating evidence and no corroborating witnesses, that he was shooting in self-defense at gang members (including Laponds Dyer ("Dyer"), Albert White (commonly known by his nickname "Nookie"), and Rico Spears ("Spears")) who were also at the gas station and who Thomas argued had first shot at him.

The state called four witnesses during its case-in-chief.[2] Ms. Gist testified that on December 11, 1993, around 10:30 p.m., she was sitting in a car with her son on her lap when she saw someone approach. Immediately before the shooting, Nookie was standing by the car talking to someone sitting in the car's back seat. Ms. Gist then heard a series of shots; the second shot blew out the front window of the car. At some point she turned and saw

---

[2]The defendant also stipulated that, if called to testify, a firearms expert would testify that at least some of the bullets found at the scene were fired from a weapon recovered from Thomas' apartment. Those that could not be so identified were not suitable for analysis because of their condition.

2

someone shooting in the direction of the car. She put her body over her son to shield him from some of the later shots, but both of them were eventually shot. She testified that she knew Spears, and that she knew of Dyer although she did not know who he was.

Marlon Davis ("Davis") was the driver of the car in which the Gists were passengers, and he testified that he was pumping gasoline into the car at the time of the shooting. As he stood by the car he saw Thomas pull out a gun and begin shooting; Davis heard six shots. Davis testified that he knew Spears and immediately before driving to the gas station had stopped to talk with him a few houses away from the gas station. Davis saw Spears and Dyer at the gas station around the time of the shooting; Dyer pulled up on the other side of the pump where Davis' car was a short time before the shooting. Davis testified that he had never been affiliated with a gang. He said that he did not see Spears or anyone else other than Thomas with a gun, and did not observe anyone shooting at Thomas.

Two police witnesses also testified during the state's case-in-chief. John Carey, a Chicago Police Department forensic investigator, testified that he recovered five bullet cartridges around the area that other witnesses identified as the location where they saw Thomas shooting, and recovered two cartridges from Davis' car. On cross-examination he admitted that when he arrived at the scene he was directed to that particular area and did not

3

search the rest of the gas station for cartridges. Michael Kill ("Kill") was a police detective who worked on the case, and testified how the police tracked down Thomas through an interview with Dyer and took Thomas into custody, finding in the process a handgun in Thomas' apartment that turned out to be the weapon used to shoot the Gists. Kill testified that he heard Thomas give a confession when Kill and Assistant States Attorney James Magro ("Magro") were interviewing Thomas.[3] According to Kill, Thomas did not tell Kill or Magro that rival gang members at the gas station were armed, that rival gang members shot at Thomas first, or that he shot in self-defense. On cross-examination Kill admitted that neither he nor Magro asked Thomas about any of those issues. Kill also admitted that Dyer was a member of the Vice Lords gang, and that other people at the gas station that evening were members of the Vice Lords or the Black Stones gangs.

At the end of the prosecution's case-in-chief, Thomas' counsel moved for and received a directed verdict on one count against Thomas, that of attempted first-degree murder for the shooting of Ms. Gist. The judge determined there was no evidence that Thomas knew Ms. Gist was in the car at the time he fired his gun.

During the defense's case, Thomas' counsel only called two witnesses. First, Keisha Dexter ("Dexter") testified that in

---

[3]The testimony at trial references a written confession but neither side has provided a copy of that confession to this court.

February of 1995 she was in a friend's car when Dyer shot at the car as it drove by where he stood. Dyer shot four times, striking the car and one of Dexter's friends. She testified that she knew Dyer from her neighborhood and that he was a leader in the Vice Lords gang.[4]

Thomas then took the stand. He testified that Dyer knew him because Dyer lived in the apartment below Thomas' aunt. According to Thomas, he had several run-ins with Dyer and Nookie in the months before December of 1993.[5] A few months before, Dyer and Nookie had chased and shot at him. After that encounter, Thomas obtained a handgun through an acquaintance for "protection." Earlier in the evening of December 11, Thomas was running an errand for his aunt when Dyer and Nookie chased and shot at him, forcing him to flee to the gas station where this shooting took place. Thomas did not draw his gun or shoot at them at that time. Instead, he went home and changed his clothes so he would not be recognized. He testified that after an hour of watching television he went to buy some food at a restaurant, although he admitted that he took a circuitous route to the restaurant that took him back by

---

[4] The trial transcript also shows that Thomas' counsel subpoenaed two other people, Anthony Little and Patrick Shepard, who were in the car with Dexter when Dyer shot at the car. Although they were present to testify, Thomas' counsel did not call them.

[5] Spears was in a group that had chased him at least once before December of 1993, although Thomas could not recall precisely when this took place.

5

the gas station.[6] At the gas station, he saw Dyer, Nookie, and Spears although initially he did not think they were armed. Thomas testified that he then saw Nookie and Dyer pull out weapons. Thomas said he also pulled his gun, and he then heard a shot that he could not trace to a particular person. He testified that he fired in response but "never stood and aimed," instead running backwards and stopping to shoot behind him so he could safely flee. He left and ran home without knowing that he had shot someone. He testified that there were many other people at the gas station at that time although he did not recognize anyone else.

Thomas also testified that after he was arrested and interrogated by the police, he was never asked if others at the gas station were armed or if they shot at him. He claimed that he did tell Magro and Kill that the other individuals at the gas station had shot at him, but he admitted that this information was not in his written confession; Thomas claimed he did not read the entire confession before he signed it. The written confession merely reflected that earlier that day Nookie and Dyer had "chased" him from a store. Thomas also admitted that Magro asked him to describe what happened, however, and that he was not just responding to specific questions.

---

[6]Thomas testified that he did not think that Dyer or his friends would be at the gas station at that time. He admitted on cross-examination, however, that the gas station was a known hangout for Dyer and other members of the Vice Lords gang.

6

After Thomas' testimony, the state called four rebuttal witnesses. Magro testified that during his interview with Thomas, Thomas never said that Dyer or Nookie pulled guns at the gas station or shot at him at any time, although Magro admitted that he did not ask Thomas this question directly. Detective James Butler ("Butler") of the Chicago Police Department gave testimony similar to Magro's, although Butler testified that he did ask "did [Dyer and Nookie] have guns and [Thomas] said no." Butler admitted that the supplemental report he prepared with his partner about Thomas' interview did not reflect that he asked this question.

Rico Spears testified in rebuttal that he was not friends with Davis or Dyer, but knew both. Spears testified that he was coming out of the gas station and was 20 or 30 feet away from Thomas when he saw him shoot toward the car where Nookie was standing. Spears said he did not see either Nookie or Dyer with a gun. He also testified that Thomas was not running while he was firing his gun.

Finally, Katie Bell ("Bell") testified. She was Thomas' girlfriend at the time of the shooting and had a child with him. She testified that on December 11, 1993, Thomas called her about 8 p.m. after his first encounter that day with Dyer and Nookie. She initially said that she did not recall their conversation, but after reviewing her previous grand jury testimony she said that during that call Thomas did not tell her that someone had a gun or

had been shooting at him.[7] She also testified that after Thomas came back from the gas station for the second time later that night, he told her that he "went after them" and shot one of "them" as he was getting into a car. She did testify that after Thomas was arrested and went to jail, he told her that someone had shot at him at the gas station. Bell also testified that about a month before the shooting someone had shot at her and Thomas while they were with their child on a street near their home.

Thomas was found guilty of the charges against him and received an extended ninety-year sentence for the first degree murder conviction (for the death of Denzell Gist), a consecutive twenty-seven-year sentence for the armed violence conviction (for committing armed violence against Ms. Gist), and a concurrent five-year sentence for the unlawful use of a weapon conviction. In entering the verdicts against Thomas the judge explained that Thomas' self-defense argument rested on his own testimony. The judge believed that "the defendant is seriously impeached on a number of factors, [] one being the omission of any of these individuals having guns in his statement, and any of these people firing at him or pulling guns on him in the statement." The judge considered this "a serious omission." The judge stated that he

---

[7]On cross-examination Bell intimated that she was questioned by Kill the day they arrested Thomas and that Kill told her that she was going to jail for killing a child and would never see her children again.

believed Spears' testimony that Thomas was not running away when he fired his gun. Finally, the judge said that he considered the "single most telling thing" to be Bell's testimony that immediately after the shooting Thomas told her, not that he shot in self defense, but that

> he went after them and he shot one of them as he was getting into his car which I think probably sums up exactly what his intent was when he went there. He went there looking for them. He went there with a gun. He went there to even it up for grievances either real or imagined. . . . In short, the defendant I think is utterly unworthy of belief based upon the evidence in the case.

Thomas received an extended term sentence for the murder conviction, pursuant to 730 ILL. COMP. STAT. ANN. 5/5-8-2 (1991), because he had a previous conviction for a Class 2 felony, and because the court found that his first-degree murder conviction was an offense against a person under twelve years of age.

With the assistance of counsel, Thomas appealed his conviction on the grounds that he was not eligible for an extended term sentence for first-degree murder under the statute imposing extended sentences, and, in light of the mitigating factors present, the trial court abused its sentencing discretion. In an unpublished opinion the appellate court affirmed Thomas' convictions and sentences. *People v. Thomas*, No. 1-95-3668, slip op. at 6 (Ill. App. Ct. March 21, 1997). Thomas subsequently filed a *pro se* petition for leave to appeal to the Illinois Supreme

Court; his petition focused on the mitigating factors present and the court's perceived failure during sentencing to consider his rehabilitative potential. In October of 1997, the Illinois Supreme Court denied that petition. *People v. Thomas*, 174 Ill.2d 589, 227 Ill. Dec. 15, 686 N.E.2d 1171 (1997).

Following the conclusion of his direct appeal, Thomas filed a *pro se* post-conviction petition arguing that he was denied effective assistance of counsel because his attorney did not call three available witnesses who would have purportedly corroborated his self-defense argument and who could have provided mitigating evidence at sentencing.[8]   He filed affidavits along with that motion in which three purported witnesses stated that they could have testified at Thomas' trial that other individuals started shooting at Thomas, which led to Thomas shooting the Gists.[9]

---

[8] The circuit court initially denied Thomas' post-conviction petition as untimely because he failed to provide complete information in his petition concerning his earlier petition for leave to appeal to the Supreme Court.  However, the state later filed a confession of error and request for remand with the appellate court that provided full information concerning Thomas' appeal, and the court then reinstated the petition and remanded it back to the circuit court. *See People v. Thomas*, No. 98-0351, slip op. at 1 (Ill. App. Ct. March 17, 1999).

[9] The three affidavits, which are also attached to Thomas' petition, are all handwritten and worded nearly identically.  Each witness states, with a few grammatical differences, that he/she

was a witness to testify in Adrian Thomas case, 95-3668. About Dec. 11, 1993 I was suppose to be subpoena because I stated to Mr. Adrian Thomas P.D. Mike Vahey.  Before trial, that I would be willing to testify to the fact that on December 11, 1993, at about 10:30 p.m. that the

10

Thomas' appointed counsel also filed a supplemental petition, arguing that Thomas' sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed his petition. *People v. Thomas*, No. 94-CR-1229, slip op. at 1 (Cook Co. Cir. Ct. Sept. 17, 2002). During a court hearing on the matter, the circuit court explained:

> It seems to me that the petition alleges that the defendant's trial counsel spoke to these witnesses that he now alleges failure to call as a basis for the petition. It seems to me that based upon what these witnesses are allegedly going to say, which is cumulative to the evidence presented at the trial there is, therefore, nothing new presented and the matter of calling these witnesses is a matter of trial strategy, which is not the basis to support a post-conviction petition, to support grounds for relief. This petition alleges that these witnesses were talked to by defense counsel.

---

person's that's the plaintiff are actually the one's that started shooting at Mr. Adrian Thomas, trying to kill him this night cause he didn't represent himself as a gang member, or being a part of their gang in their said territory and this is why the shooting accured the plaintiff tried to [kill/bodily harm] Adrian Thomas.

Thomas stated in his state court petition for post-conviction relief that "Prior to the trial the petitioner told his defense attorney" that these witnesses were present at the gas station and were willing to testify "that they saw [Dyer] and Nookie draw handguns and began firing at the petitioner." He further stated in his petition that the purported witnesses "all lived in the neighborhood and [were] familiar with the gang activity of Nookie and Laponds prior to the shoot out [sic] with the petitioner." He signed and notarized the petition, stating that the facts in the petition "were true and correct to the best of [his] belief and knowledge."

11

*People v. Thomas*, No. 94-CR-1229, Report of Proceedings, at A-3 (Cook Co. Cir. Ct. Sept. 16, 2002).

Thomas appealed this dismissal, basing his motion solely on the argument that the witnesses his attorney failed to call would have supported his otherwise-uncorroborated self-defense theory. In an unpublished order, the appellate court affirmed the circuit court's dismissal of Thomas' petition. *People v. Thomas*, No. 94-CR-1229, slip op. at 2 (Ill. App. Ct. July 22, 2004). The appellate court did not address the merits of Thomas' ineffective assistance claim and ignored the circuit court's conclusion that the testimony would have been cumulative, but instead focused on the affidavits Thomas presented in support of his petition. It found that the affidavits did not support Thomas' assertions because they did not state the basis for the witnesses' knowledge, did not identify who the "plaintiff" was that purportedly shot at Thomas, and did not clearly substantiate Thomas' contention that rival gang members shot at him before he shot back in self-defense. *Id.* at 6-7. The opinion concluded that "[d]ue to these deficiencies, we find defendant's affidavits insufficient to support his allegation of ineffective assistance of counsel for failure to call these witnesses." *Id.* at 7.

Thomas then filed a *pro se* petition for leave to appeal to the Illinois Supreme Court on three grounds, including (1) ineffective assistance of counsel for failing to call the three witnesses; (2)

12

ineffective assistance for his trial attorney's failure to investigate ballistic evidence; (3) other constitutional challenges to the conviction and sentencing, including "unconstitutional stat[utes]," "double-jeopardy through consecutive sentencing," inconsistent verdicts, and "not found guilty beyond a reasonable doubt."[10]  The Supreme Court denied his petition for leave to appeal. *People v. Thomas*, 213 Ill.2d 573, 293 Ill. Dec. 868, 829 N.E.2d 793 (2005).

This petition for writ of habeas corpus followed. In his petition, Thomas raises the following arguments: (1) he received ineffective assistance of counsel because his counsel failed to call three witnesses who might have corroborated his testimony; (2) he received ineffective assistance of counsel because his counsel failed to independently investigate "mitigating" evidence; (3) his Fifth Amendment rights were violated because he was sentenced to an extended term in violation of Illinois' extended sentencing statute, 730 ILL COMP. STAT. ANN. 5/5-8-2; (4) his constitutional rights were violated because he was sentenced to consecutive sentences based on offenses stemming from the same criminal act; (5) his sentence was unconstitutional because he was convicted of

---

[10]Thomas also added a fourth argument addressing why the affidavits he submitted were sufficient, but this relates to his ineffective assistance argument and is not an independent ground for challenging his conviction and sentence.

13

first-degree murder when he did not know that anyone was in the vehicle into which he shot.[11]

## II.

The federal statute which governs petitions for writs of habeas corpus, 28 U.S.C.A. § 2254 (2006), provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decision is "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C.A. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State" and where the applicant has not procedurally defaulted his claims.

---

[11]Because Thomas prepared his petition without the assistance of counsel, I will give it a generous interpretation. *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

14

28 U.S.C.A. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).[12] These limitations are intended to allow state courts a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Procedural default may occur where the petitioner did not comply with state procedural requirements during his appeals in state court such that the state court found these failures to be an "independent and adequate" state law ground for denying his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). When a state court relies on a state procedural ground to avoid reaching the merits of a petitioner's claim, that ground must be clearly and expressly relied upon and must be firmly established and regularly followed. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *O'Sullivan*, 526 U.S. at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46. *See also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (requiring a claim to be raised through one full round of appeals, either on direct appeal of the petitioner's conviction

---

[12]Section 2254 also provides, however, that I may deny a writ of habeas corpus on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2).

or through post-conviction proceedings, to avoid procedural default).

Here, Thomas has procedurally defaulted all of his claims. He first raised his second ineffective assistance of counsel claim in his post-conviction appeal to the Illinois Supreme Court. He raised his third claim concerning the extended sentencing statute only on direct appeal to the appellate court and abandoned it thereafter. He raised his fourth and fifth claims for the first time in his post-conviction appeal to the Illinois Supreme Court.

The only claim that Thomas brought through one full round of appeals is his first claim concerning the three witnesses who he contends could have corroborated his testimony at trial. This claim was procedurally defaulted as well, however, because the appellate court concluded that Thomas' affidavits were insufficient to support his allegations. Under Illinois law, a petition for post-conviction relief must be accompanied by "affidavits, records, or other evidence supporting its allegations." 725 ILL. COMP. STAT. ANN. 5/122-2. *See also People v. Rissley*, 206 Ill.2d 403, 412, 276 Ill. Dec. 821, 826, 795 N.E.2d 174, 179(2003) (explaining that a petition for post-conviction relief is not entitled to an evidentiary hearing "unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make the substantial showing of a constitutional violation"). The Illinois appellate court concluded that Thomas

16

was not entitled to an evidentiary hearing because his accompanying affidavits did not support his assertions. These affidavits did not state the basis for the witness' knowledge, did not identify who it was that shot at Thomas, and did not clearly support his self-defense theory. At least one other court has concluded that failure to attach sufficient affidavits or other evidence to a petition for post-conviction relief is a procedural bar to a petition for writ of habeas corpus. *See, e.g., United States ex rel. Novak v. Grankey*, 871 F. Supp. 1053, 1056 (N.D. Ill. 1995) (holding that the petitioner's claims were procedurally defaulted where he failed to include facts supporting a post-conviction petition, as required by 725 ILL. COMP. STAT. ANN. 5/122-2). Thomas did not provide the Illinois courts with sufficient factual allegations supported by affidavits or other evidence from which they could determine the merit of his ineffective assistance of counsel arguments. Therefore, this claim is procedurally defaulted.[13]

---

[13]As I interpret Thomas' reply brief, he argues that the Illinois courts erred in interpreting their own procedural rule concerning the requirements for affidavits submitted to support a petition for post-conviction relief. However, I have no jurisdiction to review a state court's determination as to the applicability of its own procedural rule where, as here, that rule was clearly relied upon and appears established and regularly followed. *See Coleman*, 501 U.S. at 729; *Braun*, 227 F.3d at 912.

17

Because Thomas' claims have all been procedurally defaulted, I may only consider them if Thomas can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The cause and prejudice test has been codified in § 2254, which provides that where a petitioner has failed to develop a factual basis for his claim in state court proceedings, a federal court cannot hold an evidentiary hearing unless the petitioner shows that (1) the claim relies on a new, retroactive constitutional rule or "a factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder could have found the applicant guilty of the underlying offense." 28 U.S.C.A. § 2254(e)(2). *See also Spreitzer v. Schomig*, 219 F.3d 639, 648 n.1 (7th Cir. 2000) (explaining that subsection (e)(2) codified the "cause and prejudice" test for procedurally defaulted claims). Thomas may show a "fundamental miscarriage of justice" by demonstrating that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The stringent

18

requirements for cause and prejudice and "fundamental miscarriage of justice" showings apply equally to Thomas despite the fact that he represents himself for this petition and represented himself during the collateral proceedings in state court. *See, e.g., Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992). Setting aside the fundamental miscarriage of justice question, I first address whether Thomas can show cause and prejudice as to each of his claims and whether these claims have any underlying merit.

## Ineffective Assistance/Failure to Call Additional Witnesses

Thomas has not met the cause and prejudice test for his first claim, that his counsel failed to call additional witnesses who would have testified that he fired his gun in self-defense. He has not presented this court with cause as to why he could not have previously discovered the factual predicates necessary for his ineffective assistance claim, namely who the additional witnesses were, what the basis of their knowledge was, why his counsel failed to call them, and why he did not properly present this information to the Illinois courts when they considered this claim. Although Thomas initially represented himself during his post-conviction proceedings, the law is clear that neither his failure to understand the procedural requirements nor his limited resources as a *pro se* litigant constitute cause for failing to adhere to the state's requirements. *Haley v. United States*, 78 F.3d 282, 285 (7th Cir. 1996).

Even if Thomas were able to demonstrate cause, the evidence he has presented to this court is not sufficient to establish that the testimony of these witnesses would have prevented a reasonable factfinder from finding him guilty of first-degree murder. The trial record does show that the trial judge did not find Thomas credible in light of his testimony's internal contradictions and the testimony of other witnesses. Other neutral witnesses who were present at the scene might have corroborated Thomas or undercut the testimony from the other witnesses. Their testimony might have overcome the issues created by Thomas' confession, the circumstances by which he went to the gas station for the second time that evening, and his statement to Bell. However, Thomas has not provided this court with enough evidence from which it could conclude that these witnesses would have made a difference. Thomas has represented to this court that he does not know who the additional witnesses are, what the basis of their knowledge is, and how they came to contact his attorney. The affidavits themselves do not provide any indicia of how their testimony could have assisted him at trial. At most, they show that there were additional witnesses available to testify who Thomas' counsel could have called. Neither the affidavits nor anything else in Thomas' petition suggest that these witnesses had first-hand knowledge of

what occurred, were credible, or would have changed the outcome of his trial.[14]

## Ineffective Assistance of Counsel/"Mitigating" Evidence

The same is true for Thomas' second ineffective assistance of counsel claim. Thomas clarifies in his reply brief that this claim focuses on his counsel's purported failure to investigate the state's physical evidence and evidence from the crime scene in order to support his claim of self-defense, and not on "mitigating" evidence in the sentencing context. As with his other ineffective assistance argument, however, Thomas has not presented any cause for failing to raise this argument properly with the Illinois courts. He has also not presented this court with any evidence from which I could find that further questioning of witnesses, further analysis of physical evidence at the scene or further development of defendant's self-defense argument would have helped him avoid conviction. It is not enough for Thomas to raise the possibility that this is the case; under the prejudice test he must present sufficient evidence to show that, but for his counsel's

---

[14]Thomas did allege in his post-conviction petitions to the Illinois state court that the purported witnesses (1) were eyewitnesses to the shooting, (2) saw Dyer and Nookie shot at him first, and (3) knew of Dyer and Nookie's previous gang activity in the neighborhood, but these allegations contradict what Thomas has now represented to this court. In short, Thomas has not made a sufficient factual showing before this court to warrant an evidentiary hearing to further analyze this claim. Therefore, there is no reason that the procedural default rule should not apply to bar this claim.

purported error, no reasonable factfinder could have found him guilty. 28 U.S.C. § 2254(e)(2). He has not met this burden.

## Extended Term Sentencing[15]

Thomas next contends that his Fifth Amendment rights were violated in three ways: (1) the applicable Illinois sentencing statute did not provide for an extended sentence based on the previous charge for which he was convicted; (2) his right to due process was violated because the judge presiding over his trial did not inform him that his prior conviction was going to be used to enhance his sentence, and (3) his rights to due process and equal protection were violated because the age of the victim was not listed in his indictment, the age of the victim was not proven, and he was not informed that the age of the victim could be used to extend his sentence. Setting aside the issues of cause and prejudice, I conclude that these claims are without merit. *See* 28 U.S.C.A. § 2254(b)(2).

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, in determining whether Thomas' sentence

---

[15]Thomas sent a letter to this court on July 26, 2006 which I construe as a motion to provide additional briefing on his extended sentencing and consecutive sentencing arguments. However, as Thomas has already had the opportunity to brief those claims in his initial petition for a writ of habeas corpus and in his reply brief, I deny that motion.

22

violated Illinois' extended sentencing statute, I may only consider whether the application of an extended sentence to Thomas violated his right to due process. A sentence may violate a defendant's right to due process if it is outside of the state court's statutory discretion to impose. *See, e.g., Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980). Thomas has presented no cognizable constitutional argument about the way in which the Illinois courts interpreted the provisions of 730 ILL. COMP. STAT. ANN. 5/5-5-3.2(b) and 730 ILL. COMP. STAT. ANN. 5/5-8-2, which set forth the provisions for issuing an extended term sentence under Illinois law. Indeed, Thomas' arguments that these provisions require that "prior convictions [be] equal to or greater than the offense" on which the conviction is based or that a Class 2 felony conviction is not an "offense" for purposes of 730 ILL. COMP. STAT. ANN. 5/5-8-2(b)(7) appear to be based on misreadings of the plain language of the statute and do not raise any constitutional concerns.

Thomas also argues that the trial court should have informed him that his prior conviction and the age of the victim could be used to enhance his sentence. However, the state court had no constitutional obligation to inform him that this was the case since Thomas did not enter a plea of guilty; it was his attorney's obligation to inform Thomas of possible sentencing issues. *Cf. Dalton v. Battaglia,* 402 F.3d 729, 733 (7th Cir. 2005) (holding that, in order for a plea to be knowing and voluntary, a defendant

23

must understand all of the potential consequences of such a plea including the potential for an extended sentence).

Finally, Thomas contends that his Fifth Amendment rights were violated because the age of the victim was not listed in his indictment and the age of the victim was not proven. Thomas seems to be arguing, under the holding in *Apprendi*, that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be proven beyond a reasonable doubt. 530 U.S. at 490-91. *See also Jones v. Hulick*, 449 F.3d 784, 790 (7th Cir. 2006) ("At a bench trial, a judge must find beyond a reasonable doubt not only the elements of the offense but also facts establishing the maximum sentence."). However, this argument is unavailing to Thomas because his direct appeal concluded in 1997, well before the Supreme Court's decision in *Apprendi*, and *Apprendi* and its progeny do not apply to cases whose direct appeals had concluded before *Apprendi* was decided. *See White v. Battaglia*, 454 F.3d 705, 706 (7th Cir. 2006). Second, the sentencing judge found that Thomas was eligible for an extended sentence both because of the age of the victim and because he had previously been convicted of a Class 2 felony. The Class 2 felony alone would have given the judge justification for giving Thomas an extended sentence, so Thomas' claim is without merit. *See* 730 ILL. COMP. STAT. ANN. 5/5-5-3.2(b)(7).

24

## Consecutive Sentencing

Thomas also argues that his Fifth Amendment rights were violated because he was sentenced to consecutive sentences based on offenses stemming from the same criminal act. I construe this as an argument that the Double Jeopardy and Due Process clauses of the Fifth and Fourteenth Amendments prohibit his consecutive sentences because, in Thomas' view, those sentences arise out of the same action and therefore cannot be consecutive to one another. However, again setting aside whether Thomas can show prejudice and cause for failing to procedurally exhaust this claim before the state court, this argument is without merit. First, the Supreme Court has previously held that the Double Jeopardy Clause does not prohibit "the imposition, in a single trial, of cumulative punishments pursuant to [two criminal statutes that may proscribe the same conduct]." *Missouri v. Hunter*, 459 U.S. 359, 367 (1983). *See also McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005) ("So long as the legislature has made sufficiently clear that multiple punishments are permitted, a court does not violate the Double Jeopardy Clause by imposing more than one punishment for the same offense."). Second, Thomas' sentence does not violate his right to due process because it was within the judge's statutory discretion to issue. In this case, Thomas was convicted of murdering Denzell Gist and of committing armed violence against Ms. Gist (i.e., causing great bodily harm to her by shooting and

injuring her), and received consecutive sentences. Illinois law provides for consecutive sentences where one of the offenses for which the defendant is convicted is first-degree murder or a Class X felony causing great bodily harm. Here, both of Thomas' offenses fit that definition. *See* 730 ILL. COMP. STAT. ANN. 5/5-8-4(a)(i). Consecutive sentences meted out in accordance with this provision do not violate a defendant's right to due process. *See, e.g.*, *United States ex rel. Harris v. Wyant*, 168 F. Supp. 2d. 856, 860 (N.D. Ill. 2001).[16] Therefore, this claim fails.

## First-Degree Murder Conviction

Finally, Thomas contends that his sentence was unconstitutional because he was convicted of first-degree murder when he did not know that anyone was in the car into which he shot. Again, setting aside whether Thomas can meet the cause and prejudice test, this claim raises no constitutional questions. At

---

[16]Thomas' argument might also be interpreted as asserting that the armed violence conviction is a lesser included offense of first-degree murder, so that a separate sentence for armed violence violates his right against double jeopardy as well as Illinois criminal statutes. *See, e.g.*, 720 ILL. COMP. STAT. ANN. 5/2-9(a); *People v. Green*, 294 Ill. App. 3d 139, 228 Ill. Dec. 513, 689 N.E.2d 385 (Ill. App. Ct. 1997). However, this is not the case where, as here, different victims were harmed by the defendant's actions. *See, e.g.*, *People v. Mercado*, 119 Ill. App. 3d 461, 74 Ill. Dec. 829, 456 N.E.2d 331 (Ill. App. Ct. 1983) (upholding multiple murder convictions where multiple victims were killed in single automobile collision with defendant). Further, armed violence is not a lesser included offense of murder where, as here, the two offenses concern different victims and therefore each require proof of different factual elements. 720 ILL. COMP. STAT. ANN. 5/2-9(a).

Thomas' trial the judge found that Thomas went to the gas station "looking for" certain individuals, and that he was shooting at those individuals when one of his shots killed Denzell Gist. I must presume that this factual determination is correct, 28 U.S.C.A. § 2254(e)(1), and that finding is amply supported by the record. Therefore, regardless of whether Thomas knew anyone was in the car when he shot into it, his intent to kill others at the gas station was transferred to his action in killing Denzell Gist, resulting in a lawful conviction for first-degree murder. *See People v. Marshall*, 398 Ill. 256, 75 N.E.2d 310, 313 (1947) ("The law is well settled that where a person shoots at one with intent to kill and murder, but kills one whom he did not intend to injure, he is not absolved from answering to the crime of murder."). Although Thomas argues that he was only shooting in self-defense, he must present clear and convincing evidence that this is the case, and here he has not done so. 28 U.S.C.A. § 2254(e)(1). Therefore, this argument raises no cognizable constitutional claim.

Fundamental Miscarriage of Justice

With respect to each of his claims, Thomas has not shown that failure to consider his claims would result in a fundamental miscarriage of justice; he has not shown that he is probably innocent. *Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 315. Even taking into account the alleged deficiencies in Thomas' representation, there is considerable evidence in the record before

me that compel the conclusion that Thomas was guilty and that the sentences he received were justified and proper. Therefore, I cannot further consider his claims now.

IV.

Thomas has procedurally defaulted on all of the claims brought before this court, and has not shown that any of the exceptions to the procedural default rule should apply. Therefore, I deny his petition. Thomas' motion to allow him to file additional briefs is also denied.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: September 25, 2006